**Julie DUBBS, and all others similarly situated, Plaintiffs–Appellants,**

v.

**CENTRAL INTELLIGENCE AGENCY, et al., Defendants–Appellees.**

No. 86–2826.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1987.

Submission Vacated Aug. 27, 1987.

Resubmitted Aug. 24, 1988.

Decided Jan. 25, 1989.

---

Richard Gayer, San Francisco, Cal., for plaintiffs-appellants.

Freddi Lipstein, Asst. U.S. Atty., Civil Div., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before NORRIS and NOONAN, Circuit Judges, and SMITH *, District Judge.

WILLIAM A. NORRIS, Circuit Judge:

I

Appellant Julie Dubbs is an openly gay woman who works as a Senior Technical Illustrator for SRI International, a defense contractor. In January 1981, SRI requested that Dubbs be granted security approval for access to classified information, including Sensitive Compartmented Information (SCI).[1] By letter dated March 9, 1981, the

---

* Honorable Russell E. Smith, Senior United States District Judge for the District of Montana, sitting by designation.

1. SCI "is data about sophisticated technical systems for collecting intelligence and the information collected by those systems." *See* "Sensitive Compartmented Information: Characteristics and Security Requirements, June 1984" Excerpt of Record (ER) at 27.

Director of Security for the Central Intelligence Agency, William Kopatish, notified Dubbs that the agency would not grant her security approval for SCI access, explaining:

> In evaluating your case, we have taken into account the strict standards of personal conduct which must be met if an individual is to have access to SCI, and we have noted the recency and persistence of the pattern of your homosexual activity. Our concern about homosexual activity is that such activity may be exploitable in a manner which may put sensitive intelligence information at risk. For example, hostile intelligence services target on employees of firms doing classified work for the U.S. Government and, more specifically, on employees with access to sensitive information. Certain hostile intelligence services regard homosexual behavior as a vulnerability which can be used to their advantage. Employees of such firms engaging in homosexual activity, thus, would be doubly targeted. Such targeting might include surveillance of them and their associates. In addition, efforts would be made to place them in circumstances in which their conduct could lead to arrest or other sanctions or otherwise influence their actions through direct or indirect pressure on them or their partners. Excerpt of Record (ER) at 58.

After this general explanation of the CIA's concern about all persons who engage in homosexual conduct,[2] the letter addressed Dubbs' case in particular:

> You have acknowledged that you have been an active homosexual since your teenage years and that you have had relationships with various women lasting from four months to two years. However, this information does not appear to have been volunteered or in any way acknowledged by yourself, or your partner, during the course of your initial security investigation. Only during the course of another security investigation was this information disclosed by you. The initial silence of both you and your partner regarding such highly significant security information indicates a perception of vulnerability, on your part and a willingness to engage in deceptive behavior in order to prevent the disclosure of possibly damaging personal information. These factors raise serious doubts about your reliability and your susceptibility to compromise by a hostile intelligence service. When these factors are considered in light of the clear possibility that any future relationships that you establish may involve a partner who is not an open homosexual and who fears public exposure, the risk to the national security is significantly increased. ER at 59.

Based on the requirements of Director of Central Intelligence Directive (DCID) 1/14 (Nov. 27, 1984) (hereinafter DCID 1/14), which establishes minimum standards governing access to SCI, and which provides that "[a]ny doubt concerning personnel having access to SCI shall be resolved in favor of the national security." Kopatish determined that granting Dubbs access to SCI would not be "clearly consistent with the interests of national security...." DCID 1/14, ER at 138.

In her complaint,[3] Dubbs alleges injury from the CIA's action denying her SCI access as follows:

> Plaintiff JULIE DUBBS is an openly Gay woman who has worked for SRI International for over five years, and is now a Senior Technical Illustrator there. She has held a Top Secret industrial security clearance from the Department of Defense since November 1981. She is sta-

---

**2.** Dubbs' claim in this case is based upon the CIA's treatment of her homosexual conduct. *See* Dubbs' Brief in Support of Motion for Partial Summary Judgment at 7, ER at 48.

**3.** Dubbs brought her case as a class action. She described the class as "all Gay women and men who apply for, have applied for, and may in future apply for SCI and other security clearances from Defendant CIA which they need for their work in private industry, as well as all current holders of such clearances, all of whom are subject to defendant CIA's anti-Gay policy." Complaint, ¶ 14, ER at 6. The district court, however, did not certify the case as a class action. As a result, Dubbs is the only plaintiff in the case at this time.

ble, is not subject to undue influence or duress through exploitable personal conduct, and meets all other constitutional requirements of Director of Central Intelligence Directive 1/14....

Plaintiff DUBBS needs [an SCI] clearance for her work at SRI. Without it she lacks flexibility, in that she cannot be assigned even temporarily to many jobs because of the CIA's clearance requirements. She has also been stigmatized as an employee unable to get such a clearance, and lost one specific opportunity already solely for lack thereof. In addition, this lack bars her from applying for many positions at SRI, so that her advancement is substantially limited. Unless she obtains this clearance, she is likely to find herself in a dead-end position with no opportunity for advancement. ER at 2, 3.

Dubbs alleges that the CIA's refusal to grant her a security clearance is the product of a blanket CIA policy denying security clearances to all persons who engage in homosexual conduct, or at the very least the product of a CIA policy which considers "private, consensual, adult homosexual conduct as a negative factor in making determinations on access to Sensitive Compartmented Information," while not considering "private, consensual, adult heterosexual conduct as a negative factor in making SCI clearance determinations except where promiscuity or extra-marital relations actually reflect lack of judgment or discretion or actually offer a potential for exploitation by a foreign intelligence service." ER at 34. Such a policy of discrimination against those who engage in homosexual conduct, Dubbs argues, is constitutionally impermissible. Dubbs also argues that the CIA's refusal to grant her a security clearance was "arbitrary and capricious" and thus violative of section 706(2) of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2).

The district court calendared the case for hearing on cross-motions for summary judgment on the following questions:

"1) did the CIA have a policy of denying access to Sensitive Compartmented Information based solely on an applicant's sexual orientation and, if it did, would such a policy be unconstitutional; and 2) if the CIA did not have such a per se policy would consideration of an applicant's sexual orientation[4] in determining whether to allow access to Sensitive Compartmented Information constitute a violation of the applicant's first amendment right to freedom of association or fifth amendment rights to equal protection and due process." ER at 259.

Treating the CIA as the moving party on the first question, the district court ruled that the CIA was entitled to summary judgment because on the evidence presented no "fair-minded" trier of fact could conclude that the CIA has a blanket policy of denying security clearances to all persons who engage in homosexual conduct. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (discussing summary judgment standards). As a matter of course, the district court also denied Dubbs' cross-motion for partial summary judgment on the same question.[5]

On the second question, the district court also awarded summary judgment to the CIA, rejecting Dubbs' claim that the CIA unconstitutionally discriminates against gays by considering homosexual conduct—but not heterosexual conduct—as a negative factor in its individualized security clearance determinations. The district court held that "individualized consideration of sexual orientation is not unconstitutional." ER at 17. In discussing and rejecting Dubbs' constitutional claim, the district court implicitly rejected Dubbs' APA claim as well by observing that a court could not "require the CIA to articulate

---

**4.** Although the district court phrased these questions in terms of sexual orientation, the parties and the district court considered the case as one involving the CIA's treatment of homosexual conduct. *See* note 2, *supra*.

**5.** Having rejected Dubbs' claim that the CIA has a blanket policy of denying security clearances to all homosexuals, the district court was not required to reach the question whether such a policy would be constitutional.

precisely how the decision to grant or deny clearances in individual cases is made." ER at 16.

In this appeal, Dubbs challenges all of the district court's summary judgment rulings, including the rejection of her APA claim. After oral argument, we vacated submission pending decision by the Supreme Court in *Webster v. Doe*, —— U.S. ——, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), *aff'g in part, rev'g in part, Doe v. Casey*, 796 F.2d 1508 (D.C.Cir.1986). Now, with the benefit of supplemental briefs filed by the parties after *Webster* was decided, we affirm in part and reverse in part the rulings of the district court in this case. *First*, we reverse the summary judgment in favor of the CIA on the question whether the CIA has a blanket policy of denying security clearances to all persons who engage in homosexual conduct, although we affirm the district court's denial of partial summary judgment to Dubbs on the same question. *Second*, we reverse the district court's ruling that individualized consideration of homosexual conduct is necessarily constitutional and cannot be reviewed by a court for constitutional infirmity. *Third*, we affirm the district court's implicit ruling that CIA security clearance determinations are not reviewable under the arbitrary and capricious standard of the APA.

## II

■ We review summary judgments *de novo*, *Williams v. Edward Apfells Coffee Co.*, 792 F.2d 1482, 1484 (9th Cir.1986), and reexamine the evidence in the record to make an independent determination whether the evidence raises a "genuine issue as to any material fact" and whether "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In doing so, we view the evidence and the inferences that a trier of fact may permissibly draw therefrom in the light most favorable to the non-moving party, in this case, Dubbs. "At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 249, 255, 106 S.Ct. at 2510, 2514.

In support of its motion for summary judgment, the CIA relies upon DCID 1/14 and the declaration of James P. Lynch, former Director of Security for the CIA, as evidence that the CIA does not have a blanket policy of denying security clearances to all homosexuals. The CIA argues that DCID 1/14 shows that the CIA follows a "whole person" approach in making security clearance determinations, with sexual orientation just one of the factors considered. The CIA cites Lynch's declaration as evidence that this "whole person" approach has been consistently followed.

In opposition, Dubbs argues that DCID 1/14 and Lynch's declaration are controverted by the testimony of Robert Gambino, also a former CIA Security Director, and the letter from William Kopatish rejecting Dubbs' application. Dubbs argues that based upon the Gambino testimony and the Kopatish letter a fair-minded trier of fact could find that the CIA in fact pursues a blanket policy of denying security clearances to all persons known to engage in homosexual activity. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 (discussing summary judgment standard).

We agree with Dubbs that the evidence would support a finding that the CIA in fact denies security clearances to all persons known to commit homosexual acts. While it is true that Gambino testified that the CIA did not follow a *per se* policy of discriminating against gays, but rather followed a "total person" approach of deciding each case on its individual merits, he also testified in a way that gives rise to a permissible inference that the CIA in fact considers all those who engage in homosexual conduct to be unacceptable security risks. Gambino testified that in his view the medical and psychiatric professions were in "disarray as to whether or not homosexuality is an outward manifestation of a deeper psychological problem...." and that "[homosexuality] raises a considerable doubt, a risk, and a risk which *has*

to be resolved in favor of the agency." ER at 75 (emphasis added). It is important to note what Gambino did not say: he did not say that homosexuality *could* raise a risk; he testified that it necessarily *does* raise a risk—a risk which is resolved against the homosexual applicant. Gambino's testimony in this respect is consistent with DCID 1/14, which dictates that "[a]ny doubt concerning personnel having access to SCI shall be resolved in favor of national security."

An inference that the CIA considers all those who engage in homosexual conduct to be unacceptable security risks also finds support in the letter signed by William Kopatish, CIA Director of Security, denying Dubbs access to SCI.[6] Kopatish wrote, "Our concern about homosexual activity is that such activity may be exploitable in a manner which may put sensitive intelligence information at risk. .... Certain hostile intelligence services regard homosexual behavior as a vulnerability which can be used to their advantage." ER at 58. For evidentiary purposes, it is important that the Kopatish letter expresses security concerns that apply to all, not just some homosexuals. Even persons such as Dubbs who are openly gay fall under the CIA's dark cloud of suspicion because of "the clear possibility that any future relationships that [they] establish may involve a partner who is not an open homosexual and who fears public exposure, the risk to national security [being] significantly increased." ER at 59.

In sum, we hold a fair-minded trier of fact could reasonably infer from the evi-dence that the CIA considers all persons who engage in homosexual activity to be unacceptable security risks.[7] Thus, we reverse the summary judgment for the CIA on Dubbs' contention that the CIA has a blanket policy of denying security clearances to all homosexuals. Because the evidence gives rise to a triable issue of fact, we also affirm the district court's denial of Dubbs' motion for partial summary judgment on this question. We express no opinion on the constitutionality of such a policy, if one exists.[8]

### III

We now review the summary judgment in favor of the CIA on Dubbs' claim that the agency unconstitutionally discriminates against gays by considering homosexual conduct, but not heterosexual conduct, a negative factor in individual security clearance determinations. In considering this question, the district court assumed that the CIA does not pursue a blanket policy of denying security clearances to *all* persons who engage in homosexual conduct, but rather considers homosexual conduct on a case-by-case basis. Dubbs argues that the CIA treats any and all homosexual conduct as a negative factor in security clearance determinations, but only considers heterosexual conduct a negative factor "where promiscuity or extra-marital relations actually reflect lack of judgment or discretion or actually offer a potential for exploitation by a foreign intelligence service." ER at 34. The district court, however, granted summary judgment against Dubbs on this

---

**6.** The Kopatish letter is quoted at length at pp. 1115–16, *supra.*

**7.** In arriving at this conclusion, we also take into account the fact that the CIA has failed to offer any evidence that it has ever granted an SCI security clearance to an applicant known to be homosexual. The CIA declined to respond to an interrogatory asking for the number of known gays to receive security clearances of any kind from January 1, 1965 to August 31, 1985, on the ground that the interrogatory was "duly burdensome and call[ed] for information which is privileged from disclosure." ER at 92.

**8.** Because the Supreme Court in *Webster* intimated that only colorable constitutional claims are judicially reviewable in the context of CIA employment terminations, and because we see no reason why the same rule should not apply to SCI clearance denials, we necessarily decide that a blanket policy of security clearance denials to all persons who engage in homosexual conduct would give rise to a colorable equal protection claim. In *Webster*, the Supreme Court declined to consider the effect of *Bowers v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) on Doe's claims because the CIA did not raise *Bowers* in its Petition for Certiorari. *See Webster*, 108 S.Ct. at 2054, n. 9. Similarly, we decline to consider the effect of *Bowers* on Dubbs' case at this stage 1 of the litigation.

question for two reasons. First, the district court declared that plaintiff Dubbs had "conceded that there is no constitutional infirmity to allowing an individualized consideration of sexual orientation." ER at 14. Second, the district court believed that judicial review of individualized security clearance determinations would be excessively intrusive into the sensitive operations of the CIA. We disagree with the district court and reverse the summary judgment on this question.

■ First, we believe the district court erred in finding that Dubbs had conceded that individualized consideration of sexual orientation is necessarily constitutional. It is true that Dubbs did say "that the government may consider an applicant's sexual orientation in determining eligibility for an SCI clearance," but what the district court overlooked was Dubbs' further statement that the CIA *"may base a denial [of a security clearance] only upon factual evidence showing susceptibility to blackmail based on threatened disclosure of orientation or practice."* ER at 48 (emphasis added). In other words, Dubbs argues that the CIA may deny a security clearance to a person whose sexuality makes him/her susceptible to blackmail, but that the CIA must apply the same standards to homosexuals and heterosexuals in making that determination. Thus, the only concession Dubbs made is that the CIA may treat homosexual behavior as it treats heterosexual behavior. This is hardly surprising since Dubbs has no colorable equal protection argument in the absence of disparate treatment.

■ We also believe that the district court erred in concluding that it would be excessively intrusive into the affairs of the CIA for a court to review Dubbs' claim that the CIA unconstitutionally discriminates against gays by treating homosexual conduct, but not heterosexual conduct, a negative factor in individual security clearance determinations. We appreciate that the district judge entered judgment before *Webster* was decided by the Supreme Court. We believe, however, that *Webster* is dispositive on this question. In holding

that colorable constitutional claims are reviewable in the context of CIA employment terminations, the Court in *Webster* observed:

Petitioner complains that judicial review even of constitutional claims will entail extensive "rummaging around" in the Agency's affairs to the detriment of national security. [citations omitted] But petitioner acknowledges that Title VII claims attacking the hiring and promotion policies of the Agency are routinely entertained in federal court ... and the inquiry and discovery associated with those proceedings would seem to involve some of the same sort of rummaging. Furthermore, the District Court has the latitude to control any discovery process which might be instituted so as to balance respondent's need for access to proof which would support a colorable constitutional claim against the extraordinary needs of the CIA for confidentiality and the protection of its methods, sources, and mission. 108 S.Ct. at 2054.

On the authority of *Webster,* we reverse the summary judgment on Dubbs' claim that the CIA unconstitutionally discriminates against gays in its individualized security clearance determinations by treating homosexual conduct, but not heterosexual conduct, as a negative factor.

### IV

■ Finally, we affirm the district court's apparent ruling that the CIA's denial of a security clearance to Dubbs was not reviewable under the "arbitrary and capricious" standard of the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). While it is true that section 706(2)(A) directs courts to "hold unlawful and set aside agency action ... found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law," this section of the APA is not applicable to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). We agree with the district court that the CIA's individual SCI security clearance determinations cannot be reviewed under section

706(2)(A) because such determinations are, for the purposes of section 701(a)(2), "committed to agency discretion by law." We believe this issue is also controlled by *Webster*.

In *Webster*, the Court held that CIA employment terminations, although reviewable under the Constitution, are not reviewable under the APA because they are committed to agency discretion by law. The statute at issue in *Webster* authorized the Director to terminate the employment of an individual whenever he "shall deem such a determination necessary or advisable in the interests of the United States." 50 U.S.C. § 403(a). This standard, the Court observed, "fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review." *Webster*, 108 S.Ct. at 2052. In other words, the Court found judicial review under an "arbitrary and capricious" standard to be precluded because there was "no law to apply." *Webster*, 108 S.Ct. at 2051, *quoting Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971).

Here, the Executive Order that gives the Director the power to grant or deny security approval also "appears to ... foreclose the application of any meaningful judicial standard of review." Executive Order No. 10,865, § 2 provides that security approval of industrial employees must be "clearly consistent with the national interest." For the purposes of section 701(a)(2), we see no meaningful basis for distinguishing this Executive Order from the statute construed in *Webster*. Simply put, neither provides any law for a court to apply.[9] We therefore affirm the district court's decision not to review CIA security clearance determinations under the arbitrary and capricious standard of the APA.

In conclusion, we AFFIRM in part, REVERSE in part, and REMAND for further

proceedings in accordance with this opinion.

---

**9.** Dubbs challenges the CIA action as being arbitrary and capricious, but does not claim that the CIA has violated its own regulations in denying her access to SCI. If Dubbs had made such a claim, the regulations themselves may arguably constitute the "law" which a court could apply in reviewing the agency action under the arbitrary and capricious standard of section 706(2)(A). The Supreme Court recognized this in *Webster* and expressly refrained from holding that such a claim would be unreviewable. 108 S.Ct. at 2053, n. 8.