913 F.2d 1399
 59 USLW 2197
 Linda B. DORFMONT, Plaintiff-Appellant,
v.
James P. BROWN, Director of Department of Defense, Defense
Legal Services Agency, Directorate for Industrial Security
Clearance Review; Frank C. Carlucci, Secretary of Defense;
United States of America, Defendants-Appellees.
 No. 88-6580.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 29, 1990.
Decided Sept. 10, 1990.
 
 Dale M. Fiola, Anaheim, Cal., for plaintiff-appellant.
 Tomson T. Ong, Asst. U.S. Atty., Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before NELSON, BRUNETTI and KOZINSKI, Circuit Judges.
 KOZINSKI, Circuit Judge:
 
 
 1
 Linda Dorfmont lost her security clearance. We consider whether the federal courts can do anything about it.
 
 Facts
 
 2
 Linda Dorfmont worked on United States government defense contracts for Hughes Aircraft, a job for which the Department of Defense had granted her a security clearance.
 
 
 3
 In 1984, while working on one of those defense contracts, Dorfmont found herself in need of a computer programmer. Unable to secure a programmer within the company, she decided to go outside for help; far outside. On several occasions during the summer of 1984, she sent company data to one Lubemir Peichev. A Bulgarian national, Peichev was serving a life sentence in federal prison for his part in the attempted hijacking of an airliner. For all that, he was said to be a top-notch programmer.
 
 
 4
 The Directorate for Industrial Security Clearance Review (DISCR), the Defense Department agency charged with reviewing the security clearances of industrial employees working on defense contracts, discovered Dorfmont's arrangement with Peichev; it was not amused. In July 1985, it sent Dorfmont a Statement of Reasons explaining that it could not make a preliminary finding that granting Dorfmont continued access to classified material was "clearly consistent with the national interest." The Directorate also advised Dorfmont it was recommending that her case be submitted to a hearing examiner for a determination whether to revoke her security clearance. The stated reason for this recommendation was "conduct of a reckless nature indicating poor judgment, unreliability or untrustworthiness," to wit the turning over of documents to Peichev.
 
 
 5
 Dorfmont submitted a response to the Statement of Reasons, and requested a formal hearing. The hearing took place before a hearing examiner on four days in September 1986. After receiving evidence and testimony from both Dorfmont and the Department of Defense, the examiner concluded that it was not clearly consistent with the national interest to continue Dorfmont's security clearance.
 
 
 6
 Dorfmont appealed to the Department of Defense Appeal Board. In September 1987, the appeal board filed its determination, finding error and remanding to the hearing examiner for reconsideration. Pursuant to the appeal board remand order, the examiner considered additional evidence and once again concluded that it was not clearly consistent with the national interest to continue Dorfmont's security clearance. Dorfmont appealed once more and, in July 1988, the appeal board affirmed the determination of the hearing examiner.
 
 
 7
 A month later, Dorfmont filed the present action seeking an injunction against the revocation of her security clearance. Dorfmont alleged that the decision of the hearing examiner and appeals board violated her rights to procedural and substantive due process. The district court dismissed the complaint, finding that it did not have jurisdiction to review the lifting of Dorfmont's security clearance.
 
 
 8
 Dorfmont appeals. The existence of subject matter jurisdiction is a question of law we review de novo. Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1421 (9th Cir.1989).
 
 Discussion
 
 9
 I. Judicial Review of Security Clearance Decisions
 
 
 10
 A. In Department of the Navy v. Egan, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the Supreme Court held that the Merit Systems Protection Board (MSPB) has no authority to review an executive decision to revoke a security clearance. The logic of that decision precludes judicial review as well.
 
 
 11
 The Court explained in Egan that the normally strong presumption in favor of appellate review of agency decisionmaking "runs aground when it encounters concerns of national security." Id. at 527, 108 S.Ct. at 823. In this "sensitive and inherently discretionary" area of decisionmaking, the "authority to protect [security] information falls on the President as head of the Executive Branch and as Commander in Chief." Id.
 
 
 12
 Because of the extreme sensitivity of security matters, there is a strong presumption against granting a security clearance. Whenever any doubt is raised about an individual's judgment or loyalty, it is deemed best to err on the side of the government's compelling interest in security by denying or revoking clearance. The general administrative standard is that a clearance may be granted or retained only if "clearly consistent with the interests of the national security." Id. at 528, 108 S.Ct. at 824 (internal quotations omitted). In light of this presumption, "no one has a 'right' to a security clearance." Id.
 
 
 13
 Security clearance decisions are inherently uncertain; they rest on the ability to predict an individual's future behavior. In Egan, the Court recognized the necessity for expertise in making such decisions. Id. at 529-30, 108 S.Ct. at 824-30. In the key passage for our purposes, the Court concluded:
 
 
 14
 Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.
 
 
 15
 Id. at 529, 108 S.Ct. at 825. This reasoning applies no less to the federal courts than to the MSPB. When it comes to security matters, a federal court is "an outside nonexpert body." We have no more business reviewing the merits of a decision to grant or revoke a security clearance than does the MSPB. Thus, the reasoning behind Egan precludes this type of judicial review.
 
 
 16
 In its subsequent decision in Webster v. Doe, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), the Court confirmed that federal courts lack jurisdiction to review the merits of security clearance decisions. The Court considered the scope of judicial review available for decisions by the Director of Central Intelligence to terminate a CIA employee for security reasons. Webster held that such decisions were committed to the discretion of the director by law, thereby precluding judicial review pursuant to the Administrative Procedure Act. Id. at 601, 108 S.Ct. at 2052.
 
 
 17
 The Department of Defense revoked Dorfmont's security clearance. The department derives its authority directly from the President. See Exec. Order No. 10865, 25 Fed.Reg. 1583 (1960), as amended by Exec Order No. 10909, 26 Fed.Reg. 508 (1961). The decision to grant or revoke a security clearance is committed to the discretion of the President by law. Egan, 484 U.S. at 527, 108 S.Ct. at 823. The district court therefore cannot review the merits of the department's decision to revoke Dorfmont's security clearance. See id. at 529-30, 108 S.Ct. at 824-25; Webster, 486 U.S. at 601, 108 S.Ct. at 2052.
 
 
 18
 B. Although Dorfmont fashions her claims as due process challenges, they are, save two, attacks on the merits of the decision to lift her security clearance. She argues essentially that her actions did not justify the lifting of her clearance: that the findings of the hearing examiner were contrary to the evidence; that the examiner must have been biased because his findings were contrary to the evidence and because he chose not to believe Dorfmont's testimony; that his findings were contrary to Department of Defense Directive 5220.6 Sec. F.3, which provides that a security clearance will be continued only if "clearly consistent with the national interest";[1] that the examiner abused his discretion in denying Dorfmont's motion to dismiss; that he abused his discretion by failing to follow the remand order of the appeal board; and that the appeal board erred and abused its discretion by affirming the determination of the examiner after reconsideration. Dorfmont also complains that the criteria defendants use to make security clearance decisions do not assure a reasonable nexus between the applicant's behavior and the security objectives of the United States. All of these claims are attacks on the merits of the department's decision in this case and on security decisions generally; the district court has no authority to review them.
 
 
 19
 Dorfmont does, however, raise two claims that do not attack the substance of the department's decision. The appeal board, in affirming the determination of the hearing examiner, explained that it has no authority to reverse a decision of the examiner, but can only affirm or remand for further proceedings. Dorfmont claims that this limitation on the appeal board's review powers violates her right to procedural due process. Dorfmont also alleges that the criteria defendants use to make security clearance decisions are vague and arbitrary and therefore do not provide adequate notice of what conduct is likely to lead to revocation of a security clearance. Id. This is a substantive due process claim. See Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1407 (9th Cir.1989) ("the due process clause includes a substantive component which guards against arbitrary and capricious government action"), cert. denied, --- U.S. ----, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). We must consider whether the district court can hear these claims.
 
 
 20
 II. Due Process Attack on Security Clearance Decisions
 
 
 21
 A. Webster held that even though section 102(c) of the National Security Act commits security-related CIA employment decisions to the director's discretion, that statute does not preclude judicial review of constitutional claims. 486 U.S. at 603, 108 S.Ct. at 2053. The plaintiff in Webster brought a host of such claims, all deriving from his contention that the decision to terminate his CIA employment was related to his homosexuality. Id. at 601-02, 108 S.Ct. at 2052-53. Without deciding whether such accusations present a colorable constitutional claim, the Court remanded to the district court for further proceedings. Id. at 603-04 & n. 8, 108 S.Ct. at 2053-54 & n. 8.
 
 
 22
 We took similar action in a case following Webster. In Dubbs v. CIA, 866 F.2d 1114, 1120-21 (9th Cir.1989), we affirmed the district court's ruling that it had no jurisdiction under the Administrative Procedure Act to review the CIA's denial of a security clearance, but remanded for the district court to consider Dubbs' claims that the CIA unconstitutionally discriminated against homosexuals in making security clearance determinations.
 
 
 23
 More recently, in High Tech Gays v. DISCO, 895 F.2d 563 (9th Cir.1990), we considered a class action that challenged a Department of Defense policy of conducting mandatory investigations of all homosexual applicants for Secret or Top Secret security clearance. Plaintiffs alleged that this policy deprived them of their speech and associational rights under the First Amendment, and of equal protection of the laws. Without addressing whether the federal courts have jurisdiction to hear these claims, we ruled in favor of defendants on the merits of the equal protection attack. Id. at 570-78.[2]
 
 
 24
 B. Webster thus did not consider whether the plaintiff had presented a colorable constitutional claim. The Court merely held that the district court had jurisdiction over such claims and remanded for further proceedings. 486 U.S. at 603-04 & n. 8, 108 S.Ct. at 2053-54 & n. 8. In Dubbs, we held that "a blanket policy of security clearance denials to all persons who engage in homosexual conduct would give rise to a colorable equal protection claim." 866 F.2d at 1119 n. 8. High Tech Gays also held that a challenge to security clearance decisions under the equal protection component of the Fifth Amendment Due Process Clause amounts to a colorable constitutional claim. See 895 F.2d at 570. None of these cases considered whether a plaintiff could state a colorable claim for denial of due process in the revocation or denial of a security clearance.
 
 
 25
 Dorfmont attempts to invoke due process, but the requirements of due process do not apply unless Dorfmont can first show that she has a cognizable liberty or property interest in her security clearance. See Board of Regents v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972); Coakley v. Murphy, 884 F.2d 1218, 1220 (9th Cir.1989). Egan dictates that she does not. Because there is a strong presumption against the issuance or continuation of a security clearance, and because the availability of a security clearance depends on an affirmative act of discretion by the granting official, "no one has a 'right' to a security clearance." Egan, 484 U.S. at 528, 108 S.Ct. at 824. Where there is no right, no process is due under the Constitution. Brady v. Gebbie, 859 F.2d 1543, 1547-48 (9th Cir.1988); San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino, 825 F.2d 1404, 1408-09 (9th Cir.1987).
 
 
 26
 Dorfmont argues that she has a protected liberty interest in her ability to practice her chosen profession, and a protected property interest in her employment at Hughes. But Dorfmont has not been deprived of the right to earn a living. She has only been denied the ability to pursue employment requiring a Defense Department security clearance. The ability to pursue such employment stands on precisely the same footing as the security clearance itself. If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance.
 
 
 27
 There is also no protected property interest in the clearance or in a job requiring such clearance. "Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source." Roth, 408 U.S. at 577, 92 S.Ct. at 2709. In order to have a constitutionally protected property interest in a government benefit, a person "must have more that an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id.
 
 
 28
 There is no such entitlement to a security clearance. This is not like the case where one is promised continued employment "except ... for ... misfeasance, malfeasance, or nonfeasance in office." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (holding that such a statutory promise did create a protected property interest in continued employment). There is a presumption against obtaining or maintaining a security clearance. A clearance may be maintained "only ... upon a finding that to do so is clearly consistent with the national interest." Department of Defense Directive 5220.6 Sec. F.3 (Aug. 12, 1985). There is no right to maintain a security clearance, and no entitlement to continued employment at a job that requires a security clearance. Dorfmont has not established a cognizable liberty or property interest and therefore is not entitled to constitutional due process protection. See Hill v. Department of Air Force, 844 F.2d 1407, 1411 (10th Cir.1988).
 
 
 29
 Dorfmont mistakenly relies on Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). In Greene the Court held that the Army could not, absent authorization from statute or the President, deprive petitioner of civilian employment by revoking his security clearance without first giving him an opportunity to examine evidence and confront witnesses against him. Id. at 508, 79 S.Ct. at 1419. The decision led directly to the Executive Order and Department of Defense Directive defining the procedures under which the department lifted Dorfmont's security clearance.
 
 
 30
 Greene does not help Dorfmont. Although the case appears superficially to allow a due process attack on a security clearance decision, it in fact does not. The Court stated explicitly that it was not deciding what procedures were constitutionally compelled, but only that petitioner could not be deprived of certain procedures in the absence of authorization from the President or Congress. Id. ("[T]raditional forms of fair procedure [should] not be restricted by implication or without the most explicit action by the Nations' lawmakers, even in areas where it is possible that the Constitution presents no inhibition.").
 
 
 31
 The Army contended that there was no protected liberty or property interest:
 
 
 32
 Although the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty" and "property" concepts of the Fifth Amendment, respondents contend that the admitted interferences which have occurred are indirect by-products of necessary governmental action to protect the integrity of secret information and hence are not unreasonable and do not constitute deprivations within the meaning of the Amendment.
 
 
 33
 Id. at 492, 79 S.Ct. at 1411 (citations omitted). The Court declined to address this claim, ruling instead on the narrower ground of "authorization." Id. at 493, 79 S.Ct. at 1412. In light of Egan, and for the reasons stated above, we believe that the Army's position is meritorious.
 
 
 34
 Our holding is also consistent with Webster, Dubbs and High Tech Gays. Those cases, to the extent they are relevant, stand for the proposition that federal courts may entertain colorable constitutional challenges to security clearance decisions. We hold only that a claim for denial of due process stemming from the revocation of a security clearance is not a colorable constitutional claim.
 
 Conclusion
 
 35
 The district court does not have jurisdiction to hear attacks on the merits of security clearance decisions. We do not today decide if the court may hear constitutional attacks on these decisions, or the precise contours of such claims if allowed. We hold only that Linda Dorfmont cannot bring colorable constitutional claims for denial of due process. These are the only constitutional claims she presents. The district court was correct in concluding that it could not hear them.
 
 
 36
 AFFIRMED.
 
 KOZINSKI, Circuit Judge, concurring:
 
 37
 This area of the law is marked by subtle concepts and fine distinctions; it also implicates fundamental principles of separation of powers, national security and individual rights. What a court does not decide can sometimes be as important--but far more difficult to divine--than what it does decide. I write separately to emphasize that an important constitutional question, unanswered by prior case law, is again left open.
 
 
 38
 The Director of Central Intelligence derives his discretionary authority over security-related employment decisions from an Act of Congress, section 102(c) of the National Security Act. See Webster, 486 U.S. at 594, 601, 108 S.Ct. at 2049, 2052. Webster 's ruling that courts may review constitutional challenges to such decisions was a matter of statutory construction, not constitutional interpretation.
 
 
 39
 In contrast, the present defendants and the defendant in Egan (the Department of Navy), derive their authority over security decisions by delegation from the President. Under the Constitution, the President has unreviewable discretion over security decisions made pursuant to his powers as chief executive and Commander-in-Chief. Egan, 484 U.S. at 527, 108 S.Ct. at 823. The Egan Court did not address whether there can be judicial review of constitutional attacks on such decisions. Had it done so, it would have faced a question of constitutional dimensions, a question very different from that addressed in Webster.[1] See Egan, 484 U.S. at 527, 108 S.Ct. at 823 ("[The President's] authority to classify and control access to information bearing on national security ... flows primarily from this constitutional investment of power ... and exists quite apart from any explicit congressional grant.").
 
 
 40
 Does the Constitution preclude such review? The answer to this question may not be the same as the answer to the similar question of statutory construction resolved in Webster, as the Constitution erects barriers to judicial review that even Congress may not override. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 170-71, 2 L.Ed. 60 (1803) ("Where the head of a department acts in a case, in which executive discretion is to be exercised; in which he is the mere organ of executive will; it is again repeated, that any application to a court to control, in any respect, his conduct would be rejected without hesitation."); Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962) (judicial review precluded where there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department.").
 
 
 41
 Neither our earlier decision in High Tech Gays nor our opinion today purports to answer the difficult preliminary question whether courts may review the security clearance decisions of officials who derive their authority from the President. In High Tech Gays, we reached the merits of constitutional claims against such officials. However, defendants never raised, and we never considered, whether federal courts could hear the claims in the first place. Similarly, the parties before us today failed to join issue on this momentous separation-of-powers question. A constitutional analysis of the distinction between sources of authority in security clearance matters is best deferred when there are more obvious ways of resolving the dispute.[2] Yet, in an appropriate case, it is a distinction that may well make a difference.
 
 
 
 [1]
 We recognize that federal courts normally have jurisdiction over claims that a federal agency did not follow one of its own regulations. See Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Webster, 486 U.S. at 602 n. 8, 108 S.Ct. at 2053 n. 8. Dorfmont's claim that the examiner's determinations are contrary to section F.3 is, superficially at least, a claim of this type. Nonetheless, a federal court cannot hear this type of challenge. Section F.3 provides that a security clearance may be continued only if "clearly consistent with the national interest." Judicial review of the Defense Department's compliance with this directive would perforce involve a review on the merits of the decision to lift the security clearance. To undertake such review is to eviscerate Egan
 
 
 [2]
 We also held that plaintiffs failed to allege sufficient facts to raise a justiciable First Amendment claim. 895 F.2d at 580
 
 
 [1]
 It may be that the Director of Central Intelligence derives his discretionary authority from the President as well as from statute. The Court did not analyze the problem this way in Webster, that case therefore does not address the reviewability of executive security decisions made pursuant to the Constitution
 
 
 [2]
 That the court has addressed the merits of a case does not preclude a subsequent determination that the case was nonreviewable. For example, in United States v. Borrayo, 898 F.2d 91 (9th Cir.1989), without addressing the jurisdictional issue, we rejected on the merits a criminal defendant's claim that the district court erred by failing to depart downward from the prescribed Sentencing Guideline range. Subsequently, in United States v. Morales, 898 F.2d 99 (9th Cir.1990), we held that we lacked jurisdiction to review sentences for failure to depart downward