Lorna L. COBB, Plaintiff,

v.

Richard J. DANZIG, Defendant.

No. CIV. 99–CV–1523 JFS.

United States District Court,
S.D. California,
San Diego Division.

Nov. 30, 1999.

to Civil Local Rule 7.1.d.1.

Paul David Jackson, Law Offices of Paul D. Jackson, San Diego, CA, for plaintiff.

U.S. Attorney CV, U.S. Attorneys Office, Civil Division, San Diego, CA, for defendant.

## PROTECTIVE ORDER LIMITING THE SCOPE OF THE DEPOSITION OF BRUCE CALLANDAR

STIVEN, United States Magistrate Judge.

On November 2, 1999, this Court took under submission Defendant Richard J. Danzig's motion for a protective order barring the depositions of A. Hammock, Helen Greer, and Bruce Callander. Plaintiff Lorna L. Cobb objects to this request and notes in her response to Defendant's motion, that she needs only to depose one of the three persons identified in Defendant's motion for a protective order—Bruce Callandar.[1]

## I. BACKGROUND

Defendant requests a protective order barring the depositions of A. Hammock, Helen Greer, and Bruce Callander based on the fact that these individuals were naval intelligence officials and security personnel involved in the investigation and suspensions of Plaintiff's security access in 1995 and 1997.

In support of the motion, Defendant makes two assertions. First, Defendant contends that this Court lacks subject matter jurisdiction to review executive branch actions involving national security issues such as revocation of a security clearance. Second, Defendant submits that the requested deponent was not part of Plaintiff's workplace and as such, he has no information relating to her claims other than what he may have obtained in performing work as an executive branch employee on Plaintiff's security access. Thus, Defendant argues that this individual does not have any information that is relevant to the subject matter of the case or that is reasonably likely to lead to the discovery of admissible evidence.

Because Defendant seeks protection in the context of discovery and does not concede that this testimony is admissible at trial, Defendant submits that if this Court determines that Mr. Callandar's deposition should go forward, strict limitations should be placed on the deposition.

Plaintiff argues that she does not intend to ask Mr. Callandar about any classified material. Moreover, Plaintiff asserts that she is not seeking to challenge or even review any decisions to revoke or suspend her security clearance. Rather, Plaintiff only seeks discovery on the issue of her immediate supervisor's motives for initiating the investigations regarding her security clearance. Thus, Plaintiff contends that the issue is not the propriety of the Navy's final decision on the security clearance or even the manner in which it was conducted, but rather, the issue

---

1. In her opposition brief, Plaintiff waived her request to depose witnesses A. Hammock and Helen Greer, provided that Defendant did not intend to offer evidence from these individuals. This Order presumes such an agreement.

is whether the impetus for the investigations was discriminatory.

## II. DISCUSSION

### A. Judicial Review of Security Clearance Decisions

■ This Court agrees with Defendant that the Supreme Court's holding in *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), and the Ninth Circuit's decision in *Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir.1990), preclude judicial review of security clearance decisions made by the Executive or his delegee. Moreover, this bar to judicial review applies equally in the context of a Title VII discrimination action. *Brazil v. Department of Navy*, 66 F.3d 193 (9th Cir.1995).

In *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988) and *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), the Supreme Court addressed whether a body outside the executive branch may review the Executive's security clearance decisions. The Court held that the grant of a security clearance and the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. *Id.* at 529, 108 S.Ct. 818. Moreover, as to these areas of Article II duties, courts have traditionally shown the utmost deference to Executive Branch responsibilities. *Id.* at 529–30, 108 S.Ct. 818.

Likewise, in *Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir.1990), the Ninth Circuit held that the decision to grant or revoke a security clearance is committed to the discretion of the President by law. *Id.* at 1401. As such, the court held that the district court could not review the merits of the Defense Department's revocation of Dorfmont's security clearance.

In *Brazil*, the court had to decide whether a federal court may, in the context of a Title VII discrimination case, review the Executive's decision to revoke a security clearance. *Brazil*, 66 F.3d at 195. The court concluded that the Title VII analysis necessarily required the court to perform some review of the merits of the security clearance decision. *Id.* at 196. In short, the court reasoned that the merits of a security clearance decision simply cannot be wholly divorced from a determination whether it was legitimate or pretextual. *Id.* at 197. Thus, the court held that Title VII does not confer authority on the federal courts to weight the merits of security clearance decisions, even where there is independent evidence of a discriminatory motive. *Id.*

### B. Courts May Limit Scope of Discovery

■ Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, courts may make any order which justice requires to assure that certain matters not be inquired into, or that the scope of the disclosure be limited to certain matters. Rule 26(c)(4). The court may limit the scope of the discovery to specific areas of inquiry or to a specific time period. Rule 26(c)(4). In order to obtain a protective order, the moving party must show "good cause" for the relief sought and a particular and specific need for the order. Rule 26(c); *Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir.1975). Even if "good cause" is shown, the court must balance the competing interests of allowing discovery and the relative burdens to the parties. *Wood v. McEwen*, 644 F.2d 797, 801–802 (9th Cir.1981).

## III. CONCLUSION

■ It is clear that this Court may not review security clearance decisions made by the Executive or his delegee and that this bar to review applies equally in the context of a Title VII discrimination case. However, the Plaintiff's focus in this case is independent of the bona fides of the security clearance investigation or the decision making process. The focus of the deposition requested in this case appears to be limited to the discovery of evidence that the initial request for an investigation and the submission by the Plaintiff's supervisor of multiple SAERs (Security Access Eligibility Reports) were based on discriminatory motives. Such an inquiry is aimed at the conduct of the Defendant's employees in Plaintiff's workplace, not the members of the Executive branch or its delegees charged with security clearance investigatory responsibility.

Accordingly, this **COURT GRANTS IN PART AND DENIES IN PART** Defendant's motion for a protective order. Plaintiff may take the deposition of Mr. Callandar, but the scope of the deposition will be limited as follows:

Plaintiff may ask whether: (1) Mr. Callandar ever learned of facts indicating that Plaintiff's superiors or colleagues harassed or discriminated against her; (2) what such harassment or discrimination reportedly consisted of; and (3) the basis for his stated belief, including any statements made by Plaintiff's supervisors or colleagues evidencing discriminatory intent.

Plaintiff is *not* permitted to elicit information from Mr. Callandar regarding:

(1) Any executive branch employee's motives[2] for reporting conducting or otherwise participating in the investigations or other steps that led to the suspensions of Plaintiff's security access;

(2) The propriety of, appropriateness of, or justification for such executive branch employees reporting, conducting or otherwise participating in the investigations or other steps that led to the suspension of Plaintiff's security access;

(3) The propriety of, appropriateness of, or basis for the decisions to suspend Plaintiff's security access; the investigations, or other steps in the executive branch that led to such decisions;

(4) Whether actions taken by executive branch employees in conducting or otherwise participating in the investigations or other steps that led to the suspensions of Plaintiff's security access violated any law, rules, regulations, or procedures.

The deposition may be scheduled at a mutually agreeable time and place, and the deposition may be taken telephonically.

**IT IS SO ORDERED.**

---

**2.** The Court in this Order describes "executive branch employees" or "the Executive or its delegees" as those persons charged with the responsibility to grant, revoke, or suspend security clearances and conducting investigations pertaining thereto.