

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-3-1996

# Stehney v. Perry

Precedential or Non-Precedential:

Docket 96-5036

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Stehney v. Perry" (1996). *1996 Decisions.* Paper 4.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/4

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 96-5036
_____


ANN K. STEHNEY,
                    Appellant

                    v.

WILLIAM J. PERRY, Secretary of Defense;
        J. MICHAEL McCONNELL, Director,
National Security Agency/Central Security Service;
 LEE HANNA, Former Chief of Management Services,
National Security Agency/Central Security Service;
   JEANNE ZIMMER, Chief of Management Services,
National Security Agency/Central Security Service;
        THE INSTITUTE FOR DEFENSE ANALYSES,
CENTER FOR COMMUNICATIONS RESEARCH, a Delaware Corporation;
        DAVID M. GOLDSCHMIDT, Director,
        The Institute for Defense Analyses,
        Center for Communications Research


_____


On Appeal from the United States District Court
        for the District of New Jersey
    (D.C. Civil Action No. 94-cv-06306)
            _____


Argued August 8, 1996

Before:  MANSMANN and SCIRICA, Circuit Judges
         and DIAMOND, District Judge*

(Filed December 3, 1996)

*The Honorable Gustave Diamond, United States District Judge for
the Western District of Pennsylvania, sitting by designation.

STEPHEN Z. CHERTKOF, ESQUIRE (ARGUED)
Kator, Scott & Heller
1275 K Street, N.W.
Washington, D.C. 20005

FRANK ASKIN, ESQUIRE
Constitutional Litigation Clinic
Rutgers Law School
15 Washington Street
Newark, New Jersey 07102

  Attorneys for Appellant


FREDDI LIPSTEIN, ESQUIRE (ARGUED)
BARBARA L. HERWIG, ESQUIRE
United States Department of Justice
Appellate Staff, Civil Division, Room 3343
10th & Pennsylvania Avenue, N.W.,
Washington, D.C. 20530-0001

  Attorneys for the Federal Appellees


KEITH P. JONES, ESQUIRE (ARGUED)
Hill Wallack
202 Carnegie Center
Princeton, New Jersey 08543-5226

  Attorney for Appellees,
  The Institute for Defense Analyses
  and David M. Goldschmidt

_____

OPINION OF THE COURT
_____


SCIRICA, Circuit Judge.

        The National Security Agency revoked Ann Stehney's security clearance after she refused to submit to a polygraph examination.  As a result, the Institute for Defense Analyses terminated her employment.  Alleging constitutional and statutory violations, Stehney sought a writ of mandamus and other appropriate relief.  The district court dismissed her suit under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and Stehney now appeals.

I.  Facts and Procedural History

        Ann Stehney is a mathematician.  In 1982, she left a tenured position at Wellesley College to work for the Institute for Defense Analyses at the Center for Communications Research in Princeton, New Jersey.  The Institute is a private think tank

that conducts cryptological research -- the making and breaking of secret codes -- as a contractor for the National Security Agency, an agency within the Department of Defense that gathers and protects intelligence information related to national security. To conduct this research, Institute employees like Stehney require access to classified information. Before granting access, NSA conducts a thorough background investigation of each person and makes "an overall common sense determination." DCID 1/14, Annex A. The NSA background investigation includes a review of personal history, criminal, financial and medical records, and at least one interview. NSA must ensure that access to classified information is "clearly consistent with the national security," and "any doubt concerning a person's continued eligibility must be resolved in favor of the national security." NSA/CSS Reg. 122-06.

In 1982 NSA investigated Stehney and granted her a security clearance. NSA is authorized by statute and regulations to use polygraph examinations as part of its investigations, see 29 U.S.C. § 2006(b) and DCID 1/14 Annex A, and since 1953 has used polygraphs in all investigations of NSA employees. Dep't. of Defense, The Accuracy and Utility of Polygraph Testing 11 (1984). But in 1982 when Stehney was hired by the Institute, NSA did not ask her to take a polygraph examination because it believed that requiring polygraph examinations might impede recruitment by NSA contractors. Shortly after Stehney was hired, the Department of Defense changed this policy and authorized use of polygraph examinations for all persons with access to classified information, including contractor employees.

In 1989, Stehney signed a Contractor Employee Advisory Handout informing her that she was "subject to an aperiodic review" of her security clearance, that review would be conducted with the aid of a polygraph examination, and that "[f]ailure to consent to an aperiodic polygraph examination may result in denial of continued access" to classified information.

In 1992, NSA asked Stehney to submit to a polygraph examination. Stehney refused because she believes polygraph examinations are scientifically unsound and inherently unreliable. NSA revoked Stehney's security clearance because she refused to take the polygraph examination. Shortly thereafter, the Institute terminated Stehney's employment because she no longer possessed a security clearance.

After exhausting administrative remedies, Stehney filed suit in the United States District Court for the District of New Jersey against Secretary of Defense William J. Perry, two current and one former NSA administrators, the Institute for Defense Analyses, and its director David Goldschmidt. Stehney's complaint alleged that: NSA failed to follow its binding agency regulations during the security clearance revocation process (Count 1); NSA deprived her of a constitutionally protected interest without due process of law (Count 2); NSA's requirement that she submit to a polygraph examination violated the Fourth Amendment (Count 3); NSA's policy of exempting certain mathematicians from the polygraph requirement denied her equal protection under the law (Count 4); NSA's and the Institute's

policies requiring polygraph examinations violated New Jersey employment law (Count 5); and the Institute's failure to assist Stehney in securing an exemption from the polygraph requirement in the same manner it assisted similarly situated male employees violated New Jersey anti-discrimination law (Count 6).  Stehney sought a writ of mandamus and other appropriate relief to require NSA to reinstate her clearance or reconsider its revocation and to require the Institute to reinstate her employment.

The district court dismissed Count 1 under Fed. R. Civ. P. 12(b)(1) because Stehney lacked standing, her suit was barred by the political question doctrine and by sovereign immunity, and because she had not met the requirements for a writ of mandamus under 28 U.S.C. § 1361.  The district court dismissed Stehney's constitutional claims in Counts 2, 3, and 4 under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.  The court dismissed Count 5 because her state law claim was preempted by federal law and declined to exercise supplemental jurisdiction over Count 6 because all federal claims had been dismissed.  Stehney v. Perry, 907 F. Supp. 806, (D.N.J. 1995).  Stehney now appeals the dismissal of Counts 1, 2, 4, 5, and 6.

II.  Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291.  Although we typically review mandamus decisions for abuse of discretion, we review non-discretionary elements de novo. See Arnold v. BLaST Intermediate Unit 17, 843 F.2d 122 (3d Cir. 1988).  The remaining issues on appeal are subject to plenary review.  Hutchins v. I.R.S., 67 F.3d 40, 42 (3d Cir. 1995) (dismissal for standing subject to plenary review); State of New Jersey v. United States, 91 F.3d 463, 466 (3d Cir. 1996) (dismissal of political question and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) subject to plenary review); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir. 1996) (dismissal for sovereign immunity subject to plenary review); Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996) (jurisdiction questions subject to plenary review); Susan N. v. Wilson School Dist., 70 F.3d 751, 763 (3d Cir. 1995) (dismissal for preemption subject to plenary review).

III.  Threshold Issues

A.  Standing

The district court dismissed Stehney's claim that NSA failed to follow its regulations in revoking her security clearance because it found that she lacked standing.  Because Stehney was no longer employed at the Institute, the district court observed she no longer possessed the "need to know" classified information, a prerequisite for security clearance.  Nor did the district court believe the Institute was under an obligation to rehire Stehney even if her security clearance were restored.  In these circumstances, the district court concluded her claim was based on speculation "about what a third-party might do in hypothetical future circumstances," and therefore insufficient to establish standing and to warrant an effective remedy.  Stehney, 907 F. Supp. 806, 815-16.  We disagree.

In Greene v. McElroy, 360 U.S. 474 (1959), an employee was dismissed from a private company because of the revocation of

his government security clearance.  The Supreme Court found the plaintiff had standing to challenge the security clearance decision:  "We note our agreement . . . that petitioner has standing to bring this suit. . . . Respondents' actions, directed at petitioner as an individual, caused substantial injuries, and were they the subject of a suit between private persons, they could be attacked as an invasion of a legally protected right to be free from arbitrary interference in private contractual relationships."  Greene v. McElroy, 360 U.S. at 493 n.22 (citations omitted).

Greene is factually indistinguishable from this case.  Stehney too has suffered a substantial injury -- loss of her employment.  She too was fired because of the government's allegedly arbitrary interference in her private contractual relationship with the Institute.  Of course, we recognize that Greene was decided in 1959 and since then, the Supreme Court has clarified the test for standing.  We will look, therefore, at the recently articulated standard.

The Supreme Court established a three-part test for Article III standing in Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464 (1982):  "Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision."  Id. at 472 (internal quotations and citations omitted).  See also Allen v. Wright, 468 U.S. 737 (1984) (applying Valley Forge test); Schering Corp. v. Food and Drug Admin., 51 F.3d 390, 395 (3d Cir.) (same), cert. denied, 116 S. Ct. 274 (1995).

The current standing test also includes non-constitutional elements.  As the Court noted:  "Even when a case falls within these constitutional boundaries, a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim."  Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979).  These non-constitutional prudential considerations "require that: (1) a litigant assert his [or her] own legal interests rather than those of third parties; (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances; and (3) a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based."  Wheeler v. Travelers Ins. Co., 22 F.3d 534, 538 (3d Cir. 1994) (internal citations and quotations omitted; citing and quoting from Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985); Warth v. Seldin, 422 U.S. 490, 499-500 (1975); and Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 475 (1982)).

Application of these standards demonstrates that

Stehney possesses standing.  Stehney's loss of her security clearance and job, an alleged result of NSA's revocation of her security clearance in disregard of agency regulations and her rights to due process and equal protection, constitutes sufficient injury for standing purposes and can be traced to defendants' conduct. See Greene v. McElroy, 360 U.S. 474, 493 n.22 (1959) (plaintiff who lost private sector job when government revoked his security clearance has standing to bring suit against government alleging due process violations in revocation process; government's actions were "directed at" plaintiff and "caused substantial injury").  Her injury is also likely to be redressed by a favorable decision, because NSA would undoubtedly conduct a new review of Stehney's clearance if ordered to do so.

Stehney has also satisfied the non-Article III prudential standing requirements.  She is asserting her own rights and not those of a third party.  Violation of constitutional and regulatory rights is not an "abstract" or "generalized grievance."  Finally, as the target of NSA regulatory action, Stehney's interests fall within the zone of interests protected by the constitutional and regulatory provisions on which her case is based.

Moreover, the Supreme Court and lower federal courts have on several occasions allowed private sector and government employees to bring suit against the government for claims arising from the security clearance process.  See, e.g., Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886 (1961); Dorfmont v. Brown, 913 F.2d 1399 (9th Cir. 1990), cert. denied, 499 U.S. 905 (1991); Dubbs v. C.I.A., 866 F.2d 1114 (9th Cir. 1989); Chesna v. United States Dept. of Defense, 850 F. Supp. 110 (D. Conn. 1994).  Like these plaintiffs, Stehney asserts NSA violated her constitutional rights and failed to follow its own regulations in revoking her clearance.  She is entitled to an adjudication of her claims on the merits.  For these reasons, we hold that Stehney has standing.

B.  Political Question Doctrine

Even if Stehney possessed standing, the district court found her mandamus claim raised non-justiciable political questions.  Stehney, 907 F. Supp. at 816.

In Department of Navy v. Egan, 484 U.S. 518, 526-29 (1988), a civilian employee of the Navy was denied a security clearance.  The question presented was whether the Merits System Protection Board, a body that reviews Civil Service employment decisions, had statutory authority to review the substance of the underlying decision to revoke the security clearance.  The Supreme Court held that it did not. "The grant of a security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch."  Id. at 527.  "The President, after all, is the 'Commander in Chief of the Army and Navy of the United States.' U.S. Const., Art. II, §2.  His authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position in the Executive

Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant. . . ." Id. at 529-30 (citations omitted). The Court recognized that review of security clearance decisions raises problems of institutional competence. "Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk." Id. at 529.

While Egan held only that the Merits System Protection Board lacked the competence and authority to review security clearance decisions under its authorizing statute, the courts of appeals have consistently held that under Egan, the federal courts may not review security clearance decisions on the merits. See Brazil v. U.S. Dept. of Navy, 66 F.3d 193, 197 (9th Cir. 1995) (no judicial review of merits of security clearance decisions under Title VII), cert.denied, 116 S. Ct. 1317 (1996); Becerra v. Dalton, 94 F.3d 145 (4th Cir. 1996) (same); Guillot v. Garrett, 970 F.2d 1320, 1325 (4th Cir. 1992) (no judicial review of the merits of security clearance decisions under the Rehabilitation Act of 1973); Dorfmont v. Brown, 913 F.2d 1399 (9th Cir. 1990) (no judicial review of merits of security clearance decisions); Jamil v. Secretary, Dept. of Defense, 910 F.2d 1203, 1206 (4th Cir. 1990) (same); Hill v. Department of Air Force, 844 F.2d 1407, 1413 (10th Cir.) (same), cert. denied, 488 U.S. 825 (1988). These decisions are based on grounds of institutional competence, separation of powers and deference to the Executive on national security matters. Thus, the federal courts may not "second guess" the lawful decision of an agency like NSA to terminate a person's access to classified information.

The district court held that Egan supported the conclusion that there was "a textually demonstrable constitutional commitment" of the issue of access to classified information to the Executive Branch in Art. II of the United States Constitution and that judicial review of these decisions violated the separation of powers. On this basis, the court declined to adjudicate Stehney's claims. Stehney, 907 F. Supp. at 816-17 (citing Baker v. Carr, 369 U.S. 186, 217 (1962)). If Stehney had asked for review of the merits of an executive branch decision to grant or revoke a security clearance, we would agree. But not all claims arising from security clearance revocations violate separation of powers or involve political questions. Since Egan, the Supreme Court and several courts of appeals have held the federal courts have jurisdiction to review constitutional claims arising from the clearance revocation process. Webster v. Doe, 486 U.S. 592, 603-04 (1988); Dorfmont v. Brown, 913 F.2d 1399, 1402 (9th Cir. 1990); Jamil v. Secretary, Dept. of Defense, 910 F.2d 1203, 1209 (4th Cir. 1990); Dubbs. v. C.I.A., 866 F.2d 1114, 1120 (9th Cir. 1989); National Fed'n of Fed. Employees v. Greenberg, 983 F.2d 286, 289-90 (D.C.

Cir. 1993). The courts also have power to review whether an agency followed its own regulations and procedures during the revocation process. Service v. Dulles, 354 U.S. 363 (1957); Sampson v. Murray, 415 U.S. 61 (1974); Doe v. Casey, 796 F.2d 1508 (D.C. Cir. 1986), aff'd in part and rev'd in part, Webster v. Doe, 486 U.S. 592 (1988) ; Jamil v. Secretary, Dept. of Defense, 910 F.2d 1203, 1208; Hill v. Department of Air Force, 844 F.2d 1407, 1412 (10th Cir. 1988); Drumheller v. Department of Army, 49 F.3d 1566, 1570-73 (Fed. Cir. 1995). See also Webster v. Doe, 486 U.S. 592, 602 n.7; Dubbs v. C.I.A., 866 F.2d 1114, 1121 n.9.

Stehney has not asked for a review of the merits of NSA's revocation decision. Rather, she asserts NSA violated her constitutional and regulatory rights in revoking her clearance. Therefore, we cannot agree with the district court that the political question doctrine precludes review of her claims. Accordingly, to the extent that Stehney seeks review of whether NSA complied with its own regulations or violated her constitutional rights, we believe she presents a justiciable claim.

C. Sovereign Immunity

The district court also found that the United States had not consented to be sued for failure to follow Defense Department or NSA security-clearance regulations and, therefore, Stehney was barred from bringing suit by the doctrine of sovereign immunity. Stehney, 907 F. Supp. at 819-20. But in Service v. Dulles, 354 U.S. 363 (1957), the Supreme Court held that the government could be sued for failure to follow its own regulations. Similarly, in Webster v. Doe, 486 U.S. 592, 603-05 (1988), the court held that federal courts had jurisdiction over constitutional claims brought by a CIA ex-employee discharged for security reasons.

It is true that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471 (1994) (citing Loeffler v. Frank, 486 U.S. 549, 554 (1988) and Federal Housing Admin., Region No. 4 v. Burr, 309 U.S. 242, 244 (1940). But the Administrative Procedure Act, 5 U.S.C. §§ 701-706, contains a waiver of sovereign immunity applicable to this case. Section 702 provides in part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by an agency action within the meaning of a relevant statute, is entitled to judicial relief thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may

> be named as a defendant in any such action,
> and a judgment or decree or decree may be
> entered against the United States.

Stehney's claim in count 1 falls within the scope of § 702 because she seeks non-monetary relief -- a review of her access to secured information -- for a legal wrong caused by agency action. The district court disagreed because it believed that 5 U.S.C. § 701(a) renders § 702 inapplicable in this case. Section 701(a) provides:

> This chapter applies, according to the
> provisions thereof, except to the extent that
> --
>
>> (1) statutes preclude judicial review; or
>> (2) agency action is committed to agency
>>     discretion by law.

The district court held that under § 701(a)(1), a statute, 50 U.S.C. § 835, precluded judicial review. Stehney, 907 F. Supp. at 820. It is true that § 835 shields NSA employment decisions, including security clearance decisions affecting persons "employed in, or detailed or assigned to" the NSA, from APA challenge. Doe v. Cheney, 885 F.2d 898, 904 (D.C. Cir. 1989); 50 U.S.C. § 831. But Stehney was employed in the private sector by an NSA contractor, and was not "employed in, or detailed or assigned to" NSA. Thus, § 835 is not applicable. If Congress intended to shield security clearance decisions affecting NSA contractor employees from APA review, it would have used language to that effect. See Pub.L. 100-180 § 1121 (d) (statute authorizing Department of Defense to conduct polygraph examinations as part of counter-intelligence program distinguishes between a "person employed by or assigned or detailed to the National Security Agency" and "an employee of a contractor of the National Security Agency").

The district court also held that under § 701(a)(2), NSA security clearance decisions are "committed to agency discretion by law," and are not reviewable. Stehney, 907 F. Supp. at 820. But whether or not security clearance decisions are committed to NSA's discretion, the agency must still follow its own regulations and may be sued for failure to do so. Service v. Dulles, 354 U.S. 363, 371-73 (1957) (though statute granted agency "absolute discretion" regarding employee discharge decisions, agency must still comply with its own regulations, and court has jurisdiction to consider claims that it did not do so; claim not barred by sovereign immunity); Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954) (though government board has discretion to make deportation decisions, board must still follow its own regulations governing exercise of its discretion; claim not barred by sovereign immunity); Sampson v. Murray, 415 U.S. 61, 71 (1974) (citing with approval ruling of Service v. Dulles); Doe v. Casey, 796 F.2d 1508, 1519 (D.C. Cir. 1986) (agency subject to suit for failing to follow its own regulations), aff'd in part and rev'd in part on other grounds, Webster, 486 U.S. 592 (1988);

Hondros v. United States Civil Serv. Comm'n, 720 F.2d 278, 293 (3d Cir. 1983) (§ 701(a)(2) does not prohibit judicial review of agency compliance with statutes or regulations). See alsoWebster v. Doe, 486 U.S. 592, 602 n.7.

Nor does § 701(a)(2) preclude judicial review of constitutional challenges to an agency's exercise of discretion. Webster v. Doe, 486 U.S. 592 (1988); Hondros, 720 F.2d at 293. In Webster v. Doe, the Supreme Court held that even if a statute grants an agency absolute discretion precluding judicial review of the merits of agency decisions, the federal courts may still consider constitutional challenges arising from the exercise of discretion, at least absent clear congressional intent to preclude such review. The court noted that this "heightened showing" is required "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." Webster, 486 U.S. at 603. Since there is no statute expressly precluding judicial review of colorable constitutional claims arising from NSA's security clearance procedure, sovereign immunity does not preclude judicial review of Stehney's constitutional claims. For these reasons, count 1 is not barred by sovereign immunity.

## IV. The Merits

Although Stehney has standing and her claims are not barred by sovereign immunity or the political question doctrine, we will affirm the dismissal of Stehney's claims on the merits.

### A. Count 1: Denial of Mandamus Relief

The district court ruled that even if Stehney possessed standing and her count 1 claim were not barred by the political question or sovereign immunity doctrines, it could not grant an injunction in the nature of mandamus under 28 U.S.C. § 1361. "It is not disputed that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980).

Stehney could have challenged NSA's alleged violations of her constitutional rights or NSA's failure to follow its own regulations under the Administrative Procedure Act. See, e.g., Webster v. Doe, 486 U.S. 592, 603-04 (1988); Dubbs v. C.I.A., 866 F.2d 1114 (9th Cir. 1989); Mangino v. Department of Army, 818 F. Supp. 1432, 1438 (D. Kan. 1993); 5 U.S.C. § 706(2). Since this alternative was available to Stehney, grant of a writ of mandamus would be improper.

### B. Count 1: NSA's Compliance with Regulations

Even if Stehney had properly framed her claim that NSA failed to comply with its own regulations as a suit under the Administrative Procedure Act, we would affirm dismissal of count 1 under Fed. R. Civ. P. 12(b)(6) because she alleges no facts constituting a failure to follow the regulations.

Stehney alleges, and we accept as true for the purposes of this appeal, that NSA revoked her security clearance solely because she refused to take a polygraph examination in violation of two specific agency regulations: DCID 1/14 §§ 5 and 12. DCID 1/14 § 5 provides:

Criteria for security approval of an individual on a need-to-know basis for access to SCI follow:

a.  The individual must be stable; trustworthy; reliable; of excellent character, judgment, and discretion; and of unquestioned loyalty to the United States.

b.  The individual requiring access to SCI must also be a US citizen.

c.  The individual's immediate family must also be U.S. citizens. . . .

d.  Members of the individual's immediate family and any other persons to whom he or she is bound by affection or obligation should neither be subject to physical, mental, or other forms of duress by a foreign power or by persons who may be or have been engaged in criminal activity, nor advocate the use of force or violence to overthrow the Government of the United States or the alteration of the form of Government of the United States by unconstitutional means.

Stehney asserts NSA failed to comply with § 5 because it revoked her security clearance for failure to take a polygraph examination, not because she failed to meet the criteria for access to classified information enumerated in the regulation. Stehney also contends NSA violated DCID 1/14 § 12, which provides in part:

When all other information developed on an individual is favorable, a minor investigative requirement that has not been met should not preclude favorable adjudication. . . . The ultimate determination of whether the granting of access is clearly consistent with the interests of national security will be an overall common sense determination based on all available information.

Stehney asserts that § 12 requires NSA to make determinations on a "whole person" standard, which precludes NSA from revoking a security clearance solely because one investigative requirement -- submission to a polygraph examination -- was not met. DCID 1/14 §§ 5 and 12 must be read in context with DCID 1/14 as a whole and in conjunction with other relevant Department of Defense and NSA security clearance process and polygraph regulations, which establish a detailed and coherent scheme for regulating access to classified information. DCID 1/14 §§ 7(e) and 8(d) authorize, and NSA/CSS Reg. No. 122-06 § VI(10) requires, the use of polygraph examinations as part of the security clearance background investigation process. DCID 1/14

Annex A provides, in part:

> Failure to Cooperate: Failure to provide
> required security forms, releases, and other
> data or refusing to undergo required security
> processing or medical or psychological
> testing will normally result in a denial,
> suspension, or revocation of access.

NSA/CSS Reg. No. 122-06 provides, in part:

> Refusal to consent to, or unsatisfactory
> completion or evaluation of any aspect of the
> programs and procedures listed in Section VI,
> when implemented as a requirement for
> continued access, may result in adverse
> personnel/administrative actions such as
> denial of continued access to NSA/CSS
> protected information and spaces, limitations
> or denial of additional accesses and/or
> security courier privileges, denials of
> TDY/PCS assignment, and/or termination of
> employment.

DoD Reg. 5210.48-R, Ch. 1(A)(5) states, in part:

> Persons who refuse to take a polygraph
> examination in connection with determining
> their continued eligibility for access . . .
> may be denied access, employment, assignment,
> or detail. . . .

These regulations establish that DCID 1/14 §§ 5 and 12 notwithstanding, refusal to take a polygraph examination constitutes sufficient grounds for revocation of a security clearance. For these reasons, we cannot agree that NSA's actions violated the agency's own regulations. Stehney has not stated a claim in count 1 for which relief may be granted, and the count was properly dismissed.

C.  Count 2: Due Process

Stehney contends NSA deprived her of a constitutionally protected interest without due process of law. Finding she had no protected property or liberty interest, the district court also ruled that in any event, Stehney had received all the process that was due. Stehney, 907 F. Supp. 819-21.

In Department of Navy v. Egan, 484 U.S. 518 (1988), the Supreme Court stated that "it should be obvious that no one has a 'right' to a security clearance." Id. at 528. Since that time, every court of appeals which has addressed the issue has ruled that a person has no constitutionally protected liberty or property interest in a security clearance or a job requiring a security clearance. Jones v. Department of Navy, 978 F.2d 1223, 1225-26 (Fed. Cir. 1992); Dorfmont v. Brown, 913 F.2d 1399, 1403-04 (9th Cir. 1990); Jamil, 910 F.2d 1203 (4th Cir. 1990); Doe v.

Cheney, 885 F.2d 898, 909-10 (D.C. Cir. 1989); Hill v. Department of Air Force, 844 F.2d 1407, 1411 (10th Cir. 1988).

But even if Stehney possessed a constitutionally protected liberty or property interest, the procedure used to revoke Stehney's security clearance was sufficient to satisfy due process. At least for that reason, her due process count was properly dismissed.

In her complaint, Stehney asserts NSA denied her due process by failing to allow her to confront witnesses against her; failing to provide her with information collected during her 1989 reinvestigation; and denying her the opportunity to present live testimony at a hearing. When measured against her claim that her security clearance was revoked solely because she failed to submit to the polygraph examination, these allegations cannot constitute a denial of due process. The right to confront live witnesses, review information from prior investigations, or to present live testimony would have not have improved the fairness of the revocation process. Stehney received advanced notice of her security clearance revocation and an opportunity to present documents and arguments against revocation. She also received three administrative appeals. Where a security clearance is denied or revoked because the subject of a background investigation refuses to comply with investigation procedures required by agency regulation, no more process is mandated. Therefore, count 2 was properly dismissed.

On appeal, Stehney asserts two other claims under the rubric of due process. First, she alleges the clearance revocation procedures followed by NSA were not authorized by Congress or the President. Yet Stehney fails to identify specific NSA procedures which she believes were not authorized. Instead, her claim rests entirely on the assertion in her brief that her case presents facts analogous those in Greene v. McElroy, 360 U.S. 474 (1959).

In Greene, the Department of Defense revoked a security clearance on the basis of confidential information without providing the clearance holder an opportunity to confront the accusing witnesses at a hearing. The Supreme Court held that absent express authorization from the President or Congress the Department could not rely on a summary procedure that provided virtually no due process protections. Stehney asserts that revocation of her security clearance without an evidentiary hearing is equally invalid absent express Presidential or Congressional approval. But this case is distinguishable from Greene in critical respects. Stehney asserts she was denied a clearance because she refuses to comply with a routine background investigation procedure -- the polygraph examination -- that was expressly authorized by Congress. See 29 U.S.C. § 2006(b)(2). In these circumstances, NSA does not need express authorization from Congress or the President to revoke a security clearance without a hearing.

Stehney also contends NSA's use of a polygraph is a "random and arbitrary process" equivalent to flipping a coin. Although not stated explicitly, the thrust of her argument seems to be that regulations requiring a polygraph test violate

substantive due process.  But nothing in the record indicates that this claim was raised in the district court.  For this reason, it is waived on appeal. Venuto v. Carella Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C., 11 F.3d 385, 393 (3d Cir. 1993); Frank v. Colt Industries, Inc., 910 F.2d 90, 100 (3d Cir. 1990).

Even though we do not decide this issue, we note that if Stehney's position were to prevail, national security agencies could easily be foreclosed from using polygraph examinations. The government contends that polygraph examinations are a useful investigatory tool not only because they assist in distinguishing between truthful and deceptive persons, but because they induce examinees to make more comprehensive disclosures that are useful in an investigation.  For this reason, use of polygraph examinations for national security clearance investigations would appear to possess a rational basis sufficient to withstand substantive due process scrutiny.  See Anderson v. City of Philadelphia, 845 F.2d 1216 (3d Cir. 1988) (use of polygraph for preemployment screening by city police does not violate equal protection or substantive due process; in absence of scientific consensus, reasonable administrators could conclude that polygraph testing can distinguish between truthful and deceptive persons with greater accuracy than chance, and it was rational for administrators to conclude that use of polygraph examinations results in fuller, more candid disclosure).

D.  Count 4: Equal Protection

Stehney contends NSA's exemption of "world class mathematicians" from its polygraph requirement, but not her, violates her constitutional right to equal protection because there is no rational basis for this distinction.  The district court dismissed this claim.  Stehney, 907 F. Supp. 823-24.  We agree.

As we have noted, there is no fundamental right to a security clearance.  See Department of Navy v. Egan, 484 U.S. 518, 528 (1988) ("It should be obvious that no one has a "right" to a security clearance.")  Nor are "non-world class mathematicians" a protected class for equal protection purposes. NSA's policy "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313 (1993).  NSA exempts a small number of internationally renown mathematicians from its polygraph requirement to facilitate their recruitment for temporary consulting positions.  United States Government memorandum, "Security Processing for IDA Professional Staff Members and World Class Mathematicians", JA 46.  As the district court aptly observed:

> In light of the recognized potential for "lost talent when suitable individuals refuse to participate in a polygraph examination", see Redefining Security, A Report to the Secretary of Defense and the Director of Central Intelligence, Joint Security Commission (February 28, 1994) . . . it is

> hardly irrational to think that there may be
> rare and singular circumstances where the
> unique talents of an especially gifted
> cryptologist expert may be so important to
> the protection of national security -- and
> needed so desperately and immediately -- that
> the interest in procuring his or her services
> outweighs the increase in security risks
> occasioned by foregoing a polygraph on a one-
> time basis.

There is a rational basis for NSA's classification.  Stehney's equal protection claim was properly dismissed.

Stehney also claims NSA's polygraph exemption for world class mathematicians, though facially neutral, has an indirect discriminatory effect on women.  But a facially neutral policy does not violate equal protection solely because of disproportionate effects.  Instead a plaintiff must allege that a classification was adopted "`because of,' not merely `in spite of' its adverse effects upon an identifiable group."  Personnel Adm'r. of Massachusetts v. Feeney, 442 U.S. 256, 271-72 (1979).  "Proof of  . . .  discriminatory intent or purpose is required to show a violation of the equal protection clause."  Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265 (1977).  Stehney did not allege that the facially neutral exemption from the polygraph requirement was adopted with the intent to discriminate against women, and so her claim was properly dismissed.

E.   Count 5: New Jersey Employment Law Violation

New Jersey law provides "a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy."  Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72, 417 A.2d 505, 512 (1980).  Under New Jersey law, an employer commits a misdemeanor if it requests an employee to take a lie detector test as a condition of employment.  Relying on this statute as evidence of New Jersey's public policy, Stehney contends she has a state law cause of action for wrongful discharge against NSA and the Institute.  The district court held the New Jersey anti-polygraph statute was preempted by a federal statute, the Employee Polygraph Protection Act (EPPA), 29 U.S.C. § 2001-2009.  Stehney, 907 F. Supp. at 824-25.  We agree.

In English v. General Electric Co., 496 U.S. 72 (1990), the Supreme Court held state law may be preempted in three circumstances:

> First, Congress can define explicitly the
> extent to which its enactments preempt state
> law. . . . Second, in the absence of explicit
> statutory language, state law is pre-empted
> where it regulates conduct in a field that
> Congress intended the Federal Government to
> occupy exclusively. . . . Finally, state law
> is pre-empted to the extent that it actually
> conflicts with federal law.  Thus, the Court
> has found preemption where it is impossible

> for a private party to comply with both state
> and federal requirements, or where state law
> stands as an obstacle to the accomplishment
> of the full purposes and objectives of
> Congress.

English, 496 U.S. at 78-79 (internal quotations and citations omitted).

Application of these standards demonstrates the New Jersey statute is preempted by federal law.

As a threshold matter, we note NSA was never Stehney's employer. Furthermore, the Employee Polygraph Protection Act, 29 U.S.C. §§ 2001-2009, exempts NSA from coverage under the New Jersey statute. Sections 2006 and 2009 of the Act provide that states may not regulate or prohibit the federal government from requiring employees of NSA contractors to take polygraph examinations. Stehney was an employee of a contractor to NSA, and falls within the scope of the Act's preemption provisions. For that reason, the New Jersey polygraph statute is preempted to the extent it may prohibit NSA from administering a polygraph examination to a person in Stehney's position. No public policy can flow from a preempted statute. Stehney therefore has no state law action for wrongful discharge against NSA.

The preemption analysis with respect to the Institute is different. The Institute was Stehney's employer and thus falls within the scope of the New Jersey polygraph statute. Moreover, the explicit language of 29 U.S.C. § 2006(b)(2)(A)(iii) applies only to actions by the federal government, and does not expressly preempt state regulation of private sector NSA contractors. Nevertheless, it is clear that the New Jersey statute is preempted when applied to private sector NSA contractors, for it comprises "an obstacle to the accomplishment of the full purposes and objectives" of federal law. Were the courts to give effect to the New Jersey polygraph law in this context, it would undermine the clear purpose and objective of 29 U.S.C. §§ 2006 and 2009 -- to shield use of polygraph examinations by the federal government for national security purposes from state regulation. It would also, incidentally, prevent any New Jersey employer from serving as an NSA contractor, an impermissible state interference with exclusive federal responsibility in matters of national security.

F. Count 6: New Jersey Anti-Discrimination Law

After dismissing counts 1 through 5, the district court declined to exercise supplemental jurisdiction over the remaining state law claim pursuant to 28 U.S.C. § 1367. This decision is committed to the discretion of the district court. Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284-85 (3d Cir. 1993). Because all federal claims were correctly dismissed and the district court found that dismissal of the remaining state claim would not be unfair to the litigants or result in waste of judicial resources, we see no abuse of discretion.

## V. Conclusion

For the foregoing reasons, we will affirm the judgment

of the district court.