Kelly N. **PRYOR and Warren E. Spivey, Jr., individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, Defendant.**

No. CIV. A. 00–CV–3242.

United States District Court, E.D. Pennsylvania.

July 5, 2001.

Andrew L. Tennis, Daniel Banks, Straddle, Ronyon, Sevens & Young, LLP, Philadelphia, PA, for Plaintiffs.

David P. Burton, Michael W. Mystique, Jr., Drinker, Middle & Breath, ALL, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

BACKWATER, District Judge.

Presently before this Court is Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. As discussed below, Defendant's motion is granted in its entirety.

## I. STATEMENT OF FACTS

Kelly N. Pryor ("Pryor") and Warren E. Spivey, Jr. ("Spivey") (collectively "Plaintiffs"), filed claims against National Collegiate Athletic Association ("Defendant" or

"NCAA"), alleging racial discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) and under 42 U.S.C. § 1981. Pryor also filed separate claims asserting discrimination on the basis of disability under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. and under Title III of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq.

Pryor and Spivey are African–American student-athletes. Pryor was recruited to play soccer at San Jose State University ("SJSU") and she ultimately signed a National Letter of Intent ("NLI") formalizing her decision to attend SJSU beginning in the fall of 1999. Similarly, Spivey signed an NLI with the University of Connecticut ("UConn") where he had been recruited to play football. The NLIs contain provisions conditioning athletic scholarships and freshman participation in intercollegiate athletics on Plaintiffs' ability to satisfy the NCAA's freshman eligibility requirements referred to as Proposition 16. These requirements include a minimum score on the Standardized Achievement Test ("SAT") and a minimum grade point average.

Plaintiffs failed to meet these requirements and Defendant denied them full qualifier status. As a learning disabled student-athlete, Pryor was allowed to seek a waiver of this decision. Upon review, Pryor was deemed a partial qualifier which allowed her to retain her athletic scholarship and to practice with SJSU's soccer team. However, she was prohibited from competing for her first year.

Spivey did not petition for a waiver, but UConn sought one on his behalf. This application was denied as was Spivey's subsequent appeal, and Spivey was prohibited from receiving athletically related financial aid or participating in intercollegi-ate athletics during his freshman year at UConn.

Under Proposition 16, Plaintiffs could compete in college athletics beginning in their second year as long as their academic performance during their first year met certain minimum standards. Additionally, in August, 1999, immediately before Plaintiffs entered college, Defendant instituted Bylaw 14.3.3.2 which specifically grants learning disabled student-athletes five years to use their four years of athletic eligibility. Nonqualifiers and partial qualifiers who are not learning disabled also are entitled to this opportunity. See Freshman Academic Eligibility Requirements 14.3.3.1. The Court is unaware of any attempts Plaintiffs have made to obtain this fourth year of eligibility.

On June 26, 2000, following their freshman years, Plaintiffs filed these claims with the Court.

## II. LEGAL STANDARD

In considering Defendant's motion, I treated it first as a motion to dismiss in accordance with Fed.R.Civ.P. 12(b)(6). As Plaintiffs' claims did not survive this review, I did not reach the question of whether a motion for summary judgment under Fed.R.Civ.P. 56 would be appropriate.

For a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court looks first at the language of the rule which provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the court must only consider those facts alleged in the complaint. See ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir.1994). Also, the court must take all well pleaded facts in the complaint as true and view them in the

light most favorable to the plaintiff. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The pleader must provide sufficient information to outline the elements of the claim, or to permit inferences to be drawn that these elements exist. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d. Cir.1993). A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## III. DISCUSSION

For the purpose of this opinion, I will address Plaintiffs' claims in the order that they appear in the complaint.

### A. Americans with Disabilities Act (Counts I, II, III, IV and V) and Rehabilitation Act (Count VI)

■ Pryor brings a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) ("Rehabilitation Act") and under Title III of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") alleging that Defendant, through its eligibility requirements, has discriminated against learning disabled athletes by denying them the opportunity to participate in intercollegiate athletics at Division I schools. As a threshold matter, Defendant argues that Plaintiff lacks standing to bring these claims and the Court agrees.

Claims under the ADA and the Rehabilitation Act should be evaluated using the same analysis. *See Jackson v. Dana Corp.,* No. 98–5431, 1999, WL 1018241, 1999 U.S. Dist. LEXIS 17380, at *23–24 (E.D.Pa. Nov. 9, 1999). The only distinction is that claims under the Rehabilitation

Act require defendants to be recipients of federal funding. As discussed *infra,* Defendant satisfies this requirement for the purpose of the motion to dismiss.

In analyzing Pryor's claims, the Court first must decide whether Pryor has standing. To meet this burden, Pryor must allege an actual case or controversy for which the Court could grant injunctive relief. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Plaintiff's success can be measured by determining whether she can satisfy the following three prongs: 1) injury in fact (a concrete harm suffered by plaintiff that is actual or imminent), 2) causation, and 3) redressibility. *See Doe v. National Bd. of Med. Examiners,* 199 F.3d 146, 152 (3d Cir.1999).

As to the first prong, Plaintiff alleges that she suffered injury in the form of denied athletic eligibility.[1] Pryor satisfies the second prong, causation, by claiming that the design of Proposition 16 and its waiver procedure discriminated against her on account of her disability and directly resulted in the denial of her freshman eligibility. Specifically, Plaintiff argues the NCAA's process for evaluating the eligibility of learning disabled students weighs academic indicators such as standardized achievement tests too heavily, as these tests are particularly unrepresentative of the abilities of learning disabled individuals. Accordingly, Plaintiff contends she was unjustifiably denied "full qualifier" status, meaning she could not compete in athletic events during her freshman year. Plaintiff also criticizes Proposition 16's waiver process claiming that it is an inadequate accommodation for learning disabled students. These allega-

---

1. Plaintiff could not assert loss of scholarship money because as a partial qualifier she is permitted to receive, and in this instance she does receive, athletically related financial aid. *See* Compl. ¶ 16.

tions are sufficient at this stage of the proceedings to make out the first two prongs of the standing analysis.

Finally, under the third prong, redressibility, Pryor's claim fails. Pryor petitions the Court for declaratory and injunctive relief. Defendant responds that the Court cannot afford Plaintiff this relief, and therefore, Plaintiff lacks standing to bring this claim. Defendant looks to *Bowers v. NCAA (IV)* for support. 130 F.Supp.2d 610, 614 (D.N.J.2001). In *Bowers*, the plaintiff brought a claim under the ADA and the Rehabilitation Act contesting the NCAA's use of the core course requirement in Proposition 16. Initially, the court in *Bowers* found plaintiff had standing because Bowers suffered from "continuing, present adverse effects" of Proposition 16. *See Bowers v. NCAA (III)*, 118 F.Supp.2d 494, 501–02 (D.N.J.2000). The court explained that by denying Bowers initial eligibility, the NCAA allowed him at most three years of competition whereas a full qualifier could compete for four years. Therefore, even if Bowers completed his first year and the initial requirements no longer affected him, the court found that the impact of Proposition 16 continued to have an adverse effect. *Id.*

Despite this initial holding, Judge Orlofsky realized upon reargument that a new eligibility rule, Rule 14.3.3.2, which went into effect in 1999, grants any student-athlete five years in which to complete her four years of eligibility. *See Bowers (IV)*, 130 F.Supp.2d at 614. Judge Orlofsky found that this rule placed *Bowers* in the same situation as if he had been declared an initial qualifier. Therefore, Judge Orlofsky reasoned that despite the denial of freshman eligibility, plaintiff had not suffered an injury for which the court could offer any remedy, and the court dismissed his claim for lack of standing. *Id.*

The facts here resemble those in *Bowers*. Like Bowers, Plaintiff was denied eligibility under Proposition 16 for her freshman year only, and as Plaintiff filed her claim in June, 2000, Rule 14.3.3.2 was in place. Therefore, Pryor is still entitled to the four years of athletic eligibility, and under Judge Orlofsky's analysis, Plaintiff did not suffer an injury on account of the initial denial.[2]

Plaintiff refutes this conclusion in her submissions to the Court, arguing that even under Rule 14.3.3.2 the procedures learning disabled student-athletes follow to obtain their fourth year of eligibility are different than those for non-disabled student-athletes. Plaintiff claims that she is required to "earn back" her fourth year whereas an individual who had been injured, for instance, and therefore did not participate for one year automatically would be entitled to recover that year.[3]

---

2. The Court notes a factual distinction between this case and *Bowers*. In *Bowers*, the plaintiff quit school, preventing him from obtaining eligibility after his freshman year. However, this factor does not alter Judge Orlofsky's analysis or his holding. Judge Orlofsky explained that if Bowers had remained in school then he could have taken advantage of the new eligibility rule and that rule would have offered him the possibility of four years of athletic competition, eliminating any injury that he had suffered and any remedy that could be sought. *See Bowers*, 130 F.Supp.2d 610, 614 (D.N.J.2001).

3. The Court disagrees with Plaintiff's characterization of this procedure. Rule 14.3.3.1 states that a partial qualifier may obtain a fourth season of intercollegiate competition "provided that at the beginning of the fifth academic year following the student-athlete's initial, full-time collegiate enrollment, the student-athlete has received a baccalaureate degree." Therefore, the non-learning disabled partial qualifier must complete one-hundred percent of their coursework in four years. By contrast, a student-athlete with a learning disability must only complete seventy-five percent of her coursework in that same time-

The discrepancy, Plaintiff submits, is evidence of the continuing adverse effects of Proposition 16.

However, even if this description was true, Plaintiff does not raise any of these concerns in her complaint. Even reading the complaint in the light most favorable to Plaintiff as required by Rule 12(b)(6), the Court cannot find allegations that pertain to the post-freshman eligibility procedures. Therefore, as in *Bowers*, the Court finds that it cannot offer Plaintiff a remedy to her injury.[4] Without an injury for which the Court can award some relief, Plaintiff fails to establish the third prong of the standing analysis. For this reason, Defendant's motion to dismiss Plaintiff's claims under the ADA and Rehabilitation Act is GRANTED.

## B. Title VI (Count VII)

Plaintiffs allege racial discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. They contend that Defendant purposefully discriminates against them by intentionally designing and implementing eligibility criteria that have a disparate impact on racial minorities. Similarly, Plaintiffs allege that Defendant's deliberate indifference to the effects of Proposition 16 constitutes purposeful discrimination.

### 1. Recipients of Federal Funds

■ To establish a prima facie case for racial discrimination under Title VI, Plaintiffs first must establish that Defendant is a recipient of federal funds. *See Guardians Ass'n v. Civil Service, Comm'n,* 463 U.S. 582, 588–89, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). In their complaint, Plaintiffs assert this relationship through several means. *See* Compl. ¶ 41. However, to survive the motion to dismiss, Plaintiffs only must allege one legally viable way for Defendant to be in receipt of federal funds. Plaintiffs achieve this end in their complaint where they describe Defendant's relationship with the National Youth Sports Program ("NYSP") and the National Youth Sports Program Fund ("NYSPF").[5]

Prior to its recent reorganization, NYSP was a program partly operated by the NCAA and was a recipient of federal funds from the United States Department of Health and Human Services. Plaintiffs allege that this relationship makes Defendant a recipient of federal funds and therefore an entity liable under Title VI. Although the Third Circuit in *Cureton* found this relationship insufficient to establish the NCAA as a recipient of federal funding, the circumstances here are different. *See Cureton v. NCAA,* 198 F.3d 107, 114–15 (3d Cir.1999). In *Cureton,* Plaintiffs brought a claim for disparate impact against the NCAA, and the Third Circuit held that the regulations which created the

---

frame. *See* Rule 14.3.3.2. As this comparison reveals, the standards are higher for a non-learning disabled partial qualifier to recover her fourth year of eligibility than it is for a learning disabled partial qualifier.

Of course, the Court notes that completing three-quarters of the academic work necessary to receive a degree may be more difficult for learning disabled individual than one who is not challenged by a disability. However, Plaintiff represents herself as an individual who would be a full qualifier if it was not for the allegedly discriminatory nature of Proposition 16. Therefore, Plaintiff could be expected to complete her coursework in the allotted time.

4. Any claim Plaintiff might want to bring on account of a failure to obtain her fourth year of competition is not yet ripe as Plaintiff has not reached her fourth year.

5. For the purpose of this analysis, the Court will use NYSP in reference to both NYSP and NYSP.

cause of action for this claim were program-specific. Accordingly, only programs directly receiving federal funding could be held liable for disparate impact under Title VI. *See id.* However, this program-specific language applies only to a claim for disparate impact. *See Bowers v. NCAA (III),* 118 F.Supp.2d 494, 527 n. 24 (D.N.J.2000). By contrast, where a claim is brought for intentional discrimination, an organization can be considered a recipient of federal funds for the purposes of Title VI on an institution-wide basis. *Id.*

As Plaintiffs allege claims under Title VI for intentional discrimination, Defendant may be held liable on account of an indirect receipt of federal funds through a program such as NYSP. Although Defendant contends that it divorced itself from the former NYSP and under NYSP's new organizational structure NCAA could not be in receipt of federal funds, Plaintiffs would be entitled to discovery to probe this new relationship, but for the ultimate disposition of this case.

*2. Allegations of Intentional Discrimination*

The next question in assessing a claim under Title VI is whether Plaintiffs' basis for alleging intentional discrimination is sufficient to survive a motion to dismiss. Case law has clearly established, and the parties do not dispute, that Title VI only provides a remedy for intentional discrimination. *See Alexander v. Choate,* 469 U.S. 287, 293, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). Plaintiffs contend in their complaint that they can demonstrate intentional discrimination in one of two ways. First, they claim they can show that discriminatory purpose was a motivating factor in the development and adoption of Proposition 16. Second, Plaintiffs argue that Defendant was deliberately indifferent to the disparate impact of Proposition

16. In considering these arguments, the Court will address them in reverse order.

a. Deliberate Indifference

■ In a recent ruling, the Supreme Court held that Title VI does not create a private cause of action for instances of disparate impact. *See Alexander v. Sandoval,* 531 U.S. 1049, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). In *Sandoval,* the Court found that even where a federally funded entity knowingly adopts or implements regulations that create a racially or ethnically disparate impact, Title VI does not afford a remedy. *Id.* Accordingly, Plaintiffs' argument that they can show intentional discrimination through Defendant's deliberate indifference to a disparate impact must be rejected.

b. Discriminatory Motive

■ Plaintiffs fail to allege intentional discrimination sufficient to make out a claim under Title VI. The standard for measuring discriminatory motive as set forth by the Supreme Court is that the policy must be adopted " 'because of' not merely 'in spite of,' its adverse effects upon an identifiable group." *Stehney v. Perry,* 101 F.3d 925, 937–38 (3d Cir.1996) (quoting *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (internal quotations omitted); *see also Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (holding race must be a motivating factor behind a challenged policy). In other words, the Court recognizes a distinction between regulations intended to achieve a racially disparate impact and those that incidentally create one.

The Court is unconvinced by Plaintiffs' allegations that Defendant's policies were designed with the goal of discriminating against African–American student-athletes. Defendant's awareness or even ac-

ceptance of a particular effect does not raise its conduct to the level of purposeful discrimination. The Court addressed this same issue in *Cureton v. NCAA* where plaintiffs sought to amend their complaint to add a claim for intentional discrimination. No. 97–131, 2000 WL 623233, 2000 U.S. Dist. LEXIS 6526, at 5 (E.D.Pa. May 12, 2000).[6] In *Cureton*, the Court denied plaintiffs' request explaining: "The mere monitoring by the NCAA of the effects its rules have upon black student-athletes does not suggest that the organization improperly considered race either in the promulgation or continued enforcement of Proposition 16." *Id.* Additionally, Proposition 16 is a facially neutral policy, motivated by Defendant's desire to improve the graduation rate of all student-athletes. *Id.* at 6. Therefore, the Court finds Defendant's design and implementation of Proposition 16 occurred in spite of rather than because of an alleged disparate impact on African–Americans. Accordingly, Plaintiffs' allegations of intentional discrimination are inadequate to establish a claim under Title VI.

For these reasons, Defendant's Motion to Dismiss and in the Alternative for Summary Judgment as to Title VI is GRANTED.

## C. Section 1981 Violation (Count VIII)

[5] Plaintiffs bring a claim under 42 U.S.C. § 1981 in which they allege that Proposition 16 has denied them, along with other African–American student-athletes, the opportunity to make and perform contracts, National Letters of Intent, ("NLI") and hence the ability to participate in college athletics and receive related financial aid. Section 1981 states in relevant part:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

To bring a claim under § 1981, Plaintiffs must establish that: 1) they are members of a racial minority; 2) Defendant intended to discriminate against them on the basis of race; and 3) Defendant's discrimination concerned an activity protected under the statute such as the right to enter into contracts and enjoy the benefits thereof. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3rd Cir.2001). Plaintiffs satisfy the first prong as it is undisputed that they are members of a racial minority. The second prong of this analysis requires a showing of intentional discrimination; knowledge of disparate impact is insufficient. *See General Bldg. Contractors Ass'n. v. Pennsylvania*, 458 U.S. 375, 381–3, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). As explained *supra* in the discussion of Title VI, Plaintiffs fail to adequately allege intentional discrimination and this deficiency merits dismissal of this claim. Nonetheless, the Court will proceed with the analysis and address the third prong.

To establish the third prong of § 1981, Plaintiffs have to show that Proposition 16 affected an activity protected by the statute. Here, Plaintiffs contend that Proposition 16's discriminatory character impeded their ability to enter into contracts and to derive benefits therefrom. As Pryor and

---

**6.** The Court recognizes that the plaintiffs in the current case differ from those in *Cureton*. However, the Court is unaware of any changes to Proposition 16 that would render its analysis inapplicable here.

Spivey entered into NLIs with SJSU and UConn, respectively, Plaintiffs only can allege Proposition 16 interfered with their ability to enjoy the benefits of these contracts. Plaintiffs argue that Defendant deprived them of the benefits of their NLIs, because it was on account of Proposition 16 that Plaintiffs breached the contracts. The Court disagrees with this argument and instead believes that compliance with Proposition 16 was simply one condition on which the NLIs relied. As Plaintiffs knowingly entered into these contracts, accepted their conditions and agreed to satisfy them, Plaintiffs cannot now, after failing to comply with the conditions, claim they were invalid.

In a factually similar case, the Northern District of Illinois addresses the issue of whether interference with the benefits of an NLI constitutes a violation of § 1981. *See Hall v. NCAA*, 985 F.Supp. 782 (N.D.Ill.1997). In *Hall*, plaintiff brings claims for violation of § 1981 and for "tortious interference with advantageous contractual relationship," alleging the NCAA's core course requirements caused him to breach his NLI. *Id.* The court rejects plaintiff's arguments explaining:

> Since the contract specifically contemplated the application of external scholastic standards to Reggie's high school academic record, and since Reggie was aware of the NCAA's initial eligibility requirements, it cannot be said that the

NCAA's involvement was unjustified. The Halls invited the NCAA into the transaction by submitting an initial eligibility application.

*Id.* at 798.[7]

As in *Hall*, Plaintiffs agreed to the terms of the NLIs, including the condition that Plaintiffs meet the academic standards of Proposition 16.[8] Therefore, Plaintiffs' breach of their contracts and the subsequent denial of related benefits occurred because Plaintiffs failed to satisfy conditions they knowingly accepted and not because of the NCAA's actions. For these reasons, Plaintiffs' claim under § 1981 cannot survive the motion to dismiss and Defendant's motion is GRANTED as to this claim.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss or in the alternative for summary judgment is granted in its entirety. Pryor's claims under the ADA, Counts I–V, under the Rehabilitation Act, Count VI, and under Title VI, Count VII, are dismissed with prejudice. Plaintiffs' claims for racial discrimination under § 1981, Count VIII, are also dismissed with prejudice. Therefore, Plaintiff's complaint is dismissed in its entirety and this case is closed.

### ORDER

AND NOW, this 5th day of July, 2001, upon consideration of Defendant's Motion

---

7. Although this language appears in the discussion of Hall's claim for "tortious interference with advantageous contractual relationship," the principles apply to claims for § 1981, because the analysis of § 1981 relies on traditional contract concepts. *See Player v. Alab. Dept. of Pensions & Sec.*, 400 F.Supp. 249, 264 (M.D.Ala.1975), *aff'd without opinion by Player v. Ala. Dept. of Pensions & Sec.*, 536 F.2d 1385 (5th Cir.1976). Moreover, the third prong under the § 1981 analysis is essentially an assessment of Defendant's interference with Plaintiffs' contract benefits and

therefore th is reasoning is appropriately imported.

8. The fact that Plaintiffs contracted with third parties, the academic institutions, rather than Defendant, does not preclude Plaintiffs' claim. *See Lewis–Kearns v. Mayflower Transit*, 932 F.Supp. 1061, 1070 (N.D.Ill.1996) (stating that § 1981 proscribes discrimination not only as to the contracting party but also as to a third party whose interference affects the formation of a contract).

to Dismiss or in the Alternative for Summary Judgment (Docket No. 8 and 9), Plaintiffs' response thereto (Docket No. 10) and all subsequent briefing, it is hereby ORDERED that Defendant's motion is GRANTED in its entirety. Plaintiffs' complaint is dismissed with prejudice and this case is closed.